UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| IN RE ALTRIA GROUP, INC. DERIVATIVE LITIGATION | Civil Action No. 3:20-cv-772 (DJN) |

**MEMORANDUM OF THEODORE H. FRANK IN SUPPORT OF MOTION TO INTERVENE**

**INTRODUCTION**

Without direct notice to shareholders, the defendants—including Juul directors—agreed to settle claims brought by shareholders by making shareholders worse off. To protect Altria's interests and his own as a shareholder, Theodore H. Frank moves to intervene to reopen this case and reconsider the final approval of settlement and award of attorney' fees.

In a derivative suit, named plaintiffs must "adequately represent the interests of [other] shareholders." Fed. R. Civ. P. 23.1; *Shelton v. Pargo*, 582 F.2d 1298, 1305 (4th Cir. 1978) (quoting *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 549-50 (1949)). This fundamental responsibility arises as a matter of due process. *Hansberry v. Lee*, 311 U.S. 32, 42-43, 45 (1940). Due process also demands that the named representatives make every practicable effort to provide individual notice of a settlement to shareholders to "apprise [them] of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. C. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). But this case demonstrates betrayal of both these principles. Here, the plaintiffs and defendants locked arms to negotiate a Settlement that (a) does not prevent the corporate negligence at issue from reoccurring, (b) spends $117 million of corporate funds on irrelevant programmatic measures, (c) enriches the lawyers and an independent monitor at shareholder expense, and (d) does it all without any direct or sufficient notice to shareholders.

1

Appellate caselaw entitles Frank to intervene as a matter of right. *See Standard Fire Ins. v. Knowles*, 568 U.S. 588, 594 (2013); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 318 (7th Cir. 2012); *Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001) (*rev'd on other grounds sub nom. Devlin v. Scardelletti*, 536 U.S. 1, 6 (2002)); *Scott v. Bond*, 734 F. App'x 188, 191 (4th Cir. 2018). As observed in *Crowley*, self-appointed plaintiffs in derivative suits often have interests that diverge from other shareholders and sometimes even align with the defendants' or their own lawyers' instead. 687 F.3d at 318. "Freely" granting intervention for nonparty shareholders prevents bad settlements when this happens, *id.*, just as Frank seeks to do here.

Separately, as an Altria shareholder injured by the company's acquisition of Juul, Frank has a financial and proprietary interest in the Settlement. *Cf. Scardelletti*, 265 F.3d at 207-08 (quoting *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1310 (3rd Cir.1993)); Settlement, ECF 140-1 at 19-20, 24, 26-27. Frank believes that the entire Settlement is incorrigible, a viewpoint that cannot be adequately represented by the very plaintiffs who negotiated it. *Id.* And while Frank's motion to intervene comes after final judgment, it is nevertheless timely. *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 393 n.14 (1977). This is because (1) to consummate the Settlement, the parties deprived him and other shareholders of proper notice, (2) Frank's Rule 60(b) motion is properly brought within the time constrictions of that rule, and (3) there is no prejudice if Frank intervenes now, since any Settlement reduction he achieves only *benefits* the share-owning parties financially and any delay is of the parties' own making. *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014).

Nor is there prejudice to third parties who might have received money under the settlement's $100 million funding commitment. According to Altria's most recent SEC filing, filed August 1, 2023, none of the $100 million funding commitment has been sent to third parties,

minimizing prejudice to third parties. As allowed under the settlement, Altria instead "expect[s] to begin funding in 2024."[1]

In *Crowley*, the Seventh Circuit justified "freely" granting intervention because only parties can appeal final judgments from derivative suits; here, the Fourth Circuit has the same rule, and Rule 60(b) motions like Frank's that collaterally challenge judgments are likewise only available to parties in the litigation. 687 F.3d at 318; *Scardelletti*, 265 F.3d at 208-10; Fed. R. Civ. P. 60 ("On motion [], the court may relieve a *party* or its legal representative from a final judgment … (emphasis added)"). Unless this Court extends *Devlin*'s logic—which is still an open question—Frank *must* intervene to have his Rule 60(b) motion considered and to get any future judicial review of the Settlement if this case is reopened. *Cf. Bolger*, 2 F.3d at 1310 (allowing appeal without intervention).

Finally, on the related issue of permissive intervention, Frank's interest here—challenging the adequacy of representation, notice, and terms of settlement—satisfies the necessary "common question of law" with plaintiffs to grant him intervention. Fed. R. Civ. P 24(b); *see also Brown v. Eckerd Drugs, Inc.,* 663 F.2d 1268, 1278 (4th Cir. 1981), *vacated on other grounds*, 457 U.S. 1128 (1982). Intervention is timely and unprejudicial, too, because the Settlement's inadequate notice caused this motion's delay and any success Frank has as an intervenor will only return money to the company coffers.

---

[1] Form 10-Q for the quarterly period ending June 30, 2023, available at: https://www.sec.gov/Archives/edgar/data/764180/000076418023000113/mo-20230630.htm (last visited August 2, 2023); *see also* Declaration of John Andren, also filed on this date.

3

ANALYSIS

I.      **Frank is entitled to intervene as a matter of right.**

Theodore H. Frank is an Altria shareholder, who has continuously owned company shares since at least September 2022.[2] Declaration of Theodore H. Frank ("Frank Decl."), ¶ 2. As of May 2, 2023, Frank currently owns approximately 739 shares in Altria. Frank Decl. ¶ 6.

Frank seeks to intervene to reopen the order granting final approval and reconsider both the Settlement and the award of attorneys' fees and the Independent Monitor's compensation. The Settlement confers significant company funds—$117 million dollars—as part of a "Funding Commitment" that will "aid cessation of underage use of tobacco and [] nicotine delivery system products." Settlement, ECF 140-1, Ex. A at ¶ 4. Facially, the parties assert the Fund deters liability from the Juul acquisition, given Juul's business practices "caused Altria to violate its commitment to reduce youth nicotine usage." Settlement, ECF 140-1 at 17.

Yet from *this* litigation alone Altria already incurs substantial financial liability. Further, the Funding Commitment's details reveal the Settlement does not "fairly and adequately serve[] the interests of [Altria], on whose behalf it was brought." *Zimmerman v. Bell*, 800 F.2d 386, 391 (4th Cir. 1986) (citing *Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y.1977)).

Instead, ancillary stakeholders reap the rewards. The Settlement directs ten million dollars to compensate an Independent Monitor for the Funding Commitment. The Monitor's enumerated responsibilities include "reviewing spending," "ensur[ing] [] independence" of expenditures, and writing an annual report to the Altria Board—all important tasks, of course, but spending one dollar just to ensure Altria doesn't overly influence the other ten is a special example of

---

[2] Accordingly, Frank is a member of the class of Altria shareholders with interest in the Settlement whose claims are waived. *See* Settlement ¶¶ I(v)–I(bb), I(kk), 3.4, 5.1, 5.2, and 5.3.

inefficiency. Further, the plaintiffs attorneys were awarded fifteen million dollars, despite this case being a "relatively light burden," for which they nevertheless engaged in a "cumbersome and lengthy discovery process" that resulted in a "façade" settlement proposal. Fee Order, ECF 179, at 10, 13. Irrespective of its inadequacy, that a Settlement even exists today is only because of this Court demanded a laundry list of terms to prevent the agreement from being illusory—and yet the plaintiffs' attorneys are the ones who will reap financial reward from it. Fee Order, ECF 179, at 9. Worst of all, the Settlement earmarks the Funding Commitment or third-party mission-driven organizations rather than remunerating shareholders injured by the botched acquisition. Settlement, ECF 140-1, Ex. A at ¶ 4. The money will be spent on "youth development programs," "helping kids make healthy decisions," and/or preventing youth smoking—legitimate goals, sure, but completely irrelevant to remedying the harm done to Altria and potentially contrary to Altria shareholders' financial interests. *Id.*

Accordingly, Frank's views of this Settlement are necessarily contradicted by those of the plaintiffs who negotiated it. Because the plaintiffs cannot acceptably represent Frank's position, Frank seeks to intervene in this action as a matter of right and this Court should grant his motion.

    A.  ***Crowley*** **Requires Intervention as of Right.**

In *Crowley*, the Seventh Circuit observed that "self-appointed investors may be poor champions of corporate interests [in derivative suits] and thus injure fellow shareholders." 687 F.3d at 318; *accord Shelton*, 582 F.2d at 1305; *Schechtman v. Wolfson*, 244 F.2d 537, 540 (2d Cir. 1957).

Judge Easterbrook recognized that because not all shareholders think alike, intervention in derivative suits must be granted "freely." 687 F.3d at 318. This ensures settlements represent the consensus of all interested shareholders, not just the named few. Further, because negotiated settlements must serve the company on whose behalf it is made, *Zimmerman*, 800 F.2d at 391,

5

"freely" granted intervention deters collusion between parties, exorbitant fees, and bad deals. Finally, because only parties can appeal a judgment in the Seventh Circuit, Easterbrook commanded that intervention be granted liberally so no person is "prevent[ed] [] from acquiring a status essential to that review." *Crowley*, 687 F.3d at 318 (citing *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998), *affirmed by an equally divided Court*, *Cal. Pub. Emps.' Ret. Sys. v. Felzen*, 525 U.S. 315 (1999)).

This case implicates *Crowley*: Plaintiffs negotiated a Settlement which drains significant funds from Altria's treasury for entities and initiatives that, at best, are completely irrelevant to Altria's corporate wellbeing and, at worst, directly sabotage the company's purpose. Settlement, ECF 140-1, Ex. A at ¶ 4. Every Altria shareholder (apart from the named plaintiffs) loses money on this Settlement, while the lawyers, Independent Monitor, and non-profits—none of whom have stake in the company—are enriched. *See* Fee Order, ECF 179 at 16 (awarding $15,000 to each named plaintiff). And just like how the movants in *Crowley* could not appeal without being named as parties—justifying "freely" granted intervention—Frank cannot bring his Rule 60(b) collateral attack on the Settlement unless he is a party to the litigation. *See* Fed. R. Civ. P. 60 ("On motion [], the court may relieve a *party* or its legal representative from a final judgment … (emphasis added)"). Given *Crowley*'s sound legal reasoning and its applicability to the facts here, this Court should likewise grant Frank intervention as a matter of right.

### B. Intervention as of Right is Required Under Fourth Circuit Precedent.

To intervene under Rule 24(a), a movant must satisfy four elements: (1) "an interest in the litigation," (2) "a risk that the interest will be impaired absent intervention," (3) "inadequate representation of the interest by the existing parties," and (4) timeliness. *Scardelletti*, 265 F.3d at 202; *see also Scott*, 734 F. App'x at 191 (citing *In re Brewer*, 863 F.3d 861, 872 (D.C. Cir. 2017)). The burden to meet each is "minimal" and, as Justice Scalia noted in his *Devlin* dissent, the

6

requirements for intervention are "typically" met "even after the class judgment has been entered." *Devlin*, 536 U.S. at 20 (Scalia, J., dissenting); *Newport News Shipbuilding and Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 122 (4th Cir. 1981). Because Frank satisfies all four elements, this Court should hold he may intervene as a matter of right under Fourth Circuit law.

1. **Interest and Risk of Impairment**

The first two requirements—interest in the litigation and risk that interest is impaired absent intervention, *Scott*, 734 F. App'x at 191—are "satisfied by the very nature of [] representative litigation." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (2005). Through continuous ownership of Altria stock, Frank maintains a financial and proprietary interest in the outcome of this litigation and its effect on Altria. And without his intervention, Frank's interest necessarily is "impaired" because he cannot act as "master of his own destiny" in how to best remedy Altria's handling of the Juul acquisition. *Scott*, 734 F. App'x at 191; *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1132 (6th Cir. 1990). Thus, by the existence of a derivative shareholder case addressing a company in which he owns stock, Frank fulfills these two primary elements.

2. **Inadequate Representation**

Separately, the plaintiffs do not adequately represent Frank's interests. *Scott*, 734 F. App'x at 191. This requirement is met by a "minimal" showing "that representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *Berger v. N.C. State Conf of the NAACP*, 142 S. Ct. 2192, 2203 (2022) (reaffirming the *Trbovich* standard). Critically, the bar for plaintiffs to be adequate representatives in Rule 24 is "separate and distinct" indeed significantly greater than the adequacy requirements of Rule 23(a) and Rule 23.1. *Woolen v. Surtran Taxicabs*, 684 F.2d 324, 331 (5th Cir. 1982). Otherwise, the Rule 24 adequacy inquiry—

which comes after the establishment of named plaintiffs in Rule 23 and 23.1—would be rendered as mere surplus.

Plaintiffs cannot fairly represent Frank's interests in this lawsuit. As a typical Altria shareholder, Frank wants the company to maximize profits while optimizing exposure to corporate liability. He does not believe that $117 million dollars of company funds should be earmarked for third-party public interest groups, some of which directly contradict Altria's business model and others which provide no tangible benefit to the company. Further, Frank does not want the plaintiffs attorneys nor the Independent Master compensated for their role in this illusory Settlement, especially at the value awarded. Necessarily, the plaintiffs who *negotiated* these terms cannot adequately represent a viewpoint like Frank's that contradicts all they agreed to. Therefore, Frank satisfies this element of the Rule 24 test, too. *Scardelletti*, 265 F.3d at 202.

Further, the prior objectors to the Settlement do not represent Frank's interests either. They are a collection of activist shareholders who "hold and promote anti-smoking views and therefore lack a strong interest in Altria's financial success." Order Sustaining Objection, ECF 170 at 2. The objectors are certainly thrilled that the Settlement spends *more* of Altria's corporate funds than the initial settlement proposal by the parties. In contrast, Frank does not want *any* of Altria's corporate funds spent on third-party public interest groups who either hold no relevance to the company's bottom line or, at worst, seek to reduce it. And Frank believes the current Settlement is still inadequate, whereas the prior objectors have acquiesced to it. Finally, the defendants cannot represent Frank's interest either: They negotiated and agreed to the Settlement, showing clear disregard for Altria shareholders like Frank by promising to spend a substantial portion of corporate funds on political repentance rather than concrete action to prevent another Juul-style acquisition—the actual harm in this case.

### 3. Timeliness

In reversing a denial of intervention for reason of untimeliness, *Alt v. U.S. E.P.A.* lays out three factors to consider: (1) why the movant was tardy in filing; (2) how far the suit has progressed; and, (3) prejudice from any delay to the other parties. 758 F.3d at 591. The *Alt* test is more a consideration than hard-and-fast rule since timeliness is not "strictly enforced" when intervention is a matter of right. *Brink v. DaLesio*, 667 F.2d 420, 428 (4th Cir. 1981). Nevertheless, the *Alt* factors demonstrate Frank's motion to intervene is timely.

The first *Alt* factor weighs *heavily* toward timeliness because Frank did not learn of the Settlement until after final approval issued, on February 25, 2023. Frank Decl. ¶ 3; Final Judgment, ECF 180 at 13. He thus could not plausibly intervene until he ascertained that his rights had been compromised. *Cf. United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004) ("A party must intervene when he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation."). The clock for timeliness does not begin to run until the movant "learn[s]" of the need for intervention. *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1012 (2022).

Nonparty shareholders "must be given notice of a proposed settlement of a shareholder's derivative action," *Bolger*, 2 F.3d at 1317, specifically so that they can make a "rational decision whether they should intervene in the settlement approval procedure." *Maher v. Zapata Corp.,* 714 F.2d 436, 451 (5th Cir.1983); *see also In re UnitedHealth Group Inc. Shareholder Derivative Litig.*, 631 F.3d 913 (8th Cir. 2011). But Frank didn't have the benefit of knowledge until *after* the Settlement was announced, and due to no fault of his own. Since learning of the Settlement, however, Frank's subsequent legal maneuver to challenge it—a Rule 60(b) motion—is timely *per se. Cf. In re Cmty. Bank of N. Va.*, 418 F.3d at 314.

There was no notice "desirous of actually informing" Frank or any other absent shareholders of the proposed settlement. *Contra Mullane*, 339 U.S. at 315; *Jones v. Flowers*, 547 U.S. 220, 229 (2006). Unlike many other securities and derivative settlements, which provide direct notice to shareholders of record, Altria was only required to publish a Summary Notice "once" in the *Wall Street Journal*, file an 8-K with the Securities and Exchange Commission, and post the Stipulation and Notice on the Investor Relations page of its website. *Compare* Preliminary Approval Order, ECF 143 at 4-5 *with* Memo ISO Amended PAO, ECF 140 at 28. "It would be idle to pretend that publication alone, as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts." *Mullane*, 339 U.S. at 315. Thus, whenever practicable, individually direct notice is required. *Id.* at 317-18. This Court accepted plaintiffs' argument that the proposed barebones publication notice was sufficient because "unlike class actions, derivative settlements do not extinguish claims held by individual shareholders." Memo ISO Amended PAO, ECF 140 at 28. Yet Rule 23.1 arises from the recognition that due process attaches to the extinguishment of derivative claims no less than non-derivative claims. As *Maher*, *Bolger*, and now this case prove, notice is the backbone of an adversarial process, and the parties' shoestring approach to it failed Frank, the other shareholders, and the company. *See In re Davita Healthcare Partners, Inc. Derivative Litig.*, 2014 WL 13024782, No. 12-cv-2074-WJM-CBS, 2014 U.S. Dist. LEXIS 207225 (D. Colo. Dec. 3, 2014) (individual notice to shareholders necessary in a derivative action).

How bad was notice here? Frank isn't disinterested investor: As the founder of the Center for Class Action Fairness (now the Hamilton Lincoln Law Institute), Frank has built a prominent and national reputation fighting against unfair settlements that disproportionately reward attorneys, administrators, or third parties (through *cy pres*) at the expense of injured class members.

Frank Decl. ¶ 23. This Settlement wrongly compensates all three groups and thus is tailor-made for Frank to challenge. And yet Frank—never one to shy away from confronting corrupt, bloated, or inadequate settlements—learned about this one from a work colleague, who received a press alert from Lexis Nexis after final judgment. Frank Decl. ¶ 13.

Further, Frank receives notifications about major Altria corporate events through third party services like Broadridge, Inc. that are aware of his ownership in the company. Frank Decl. ¶ 9 and Ex. F. Altria has a preexisting business relationship with Broadridge, a company which offers services specifically for class action settlement notification to corporate shareholders. Frank Decl. ¶ 10 and Ex. G. Yet for some reason, the parties decided *not* to use direct notice services like Broadridge, likely because some shareholders like Frank would have objected to spending $117 million dollars of treasury funds—their money—on plaintiffs' legal fees, the Independent Monitor, and various public interest groups, some of which apparently will directly subvert Altria's business model. Cumulatively, these facts are a warning siren that the attempted notice was a "mere gesture" that was not designed to adequately inform shareholders of the Settlement as required by Rule 23.1 and the Constitution. *Mullane.*, 339 U.S. at 315.

Critically, when notice is insufficient, intervening shareholders like Frank do not pay the price. *Papilsky v. Berndt*, 466 F.2d 251, 256-60 (2d Cir. 1972) (refusing to apply *res judicata* in a derivative suit because proper notice was not given). For parties in a class suit to bind a nonparty class member, a court must provide the "minimal procedural due process protection[s]" of "notice plus an opportunity to be heard and participate in the litigation." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Mullane*, 339 U.S. 306, at 315; *McAdams v. Robinson*, 26 F.4th 149, 157-58 (2022) (holding that notice was satisfied through direct mail and email to class members

which included a database search for change of address). Frank did not receive any notice, so the first *Alt* factor weighs decisively in holding Frank's motion to intervene as timely.

Second, while this case has progressed past final judgment, the class members "typically" meet the requirements to intervene as a matter of right "even after the class judgment has been entered." *Devlin*, 536 U.S. at 20 (Scalia, J., dissenting); *accord United Airlines*, 432 U.S. at 393 n.14; *Brewer*, 863 F.3d at 872. The Fourth Circuit recognizes that "entry of final judgment is not an absolute bar to [intervention]." *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 840 (4th Cir. 1999). Unlike *Moore*, the case has not been dismissed, and Frank does not wish to "breathe life into a 'nonexistent lawsuit,'" which would prejudice the parties. *Id.* To the contrary, the Court retained jurisdiction over the Settlement and all parties, as spelled out in the settlement agreement itself. Dkt. 180 at 4. The Fourth Circuit has a long history of permitting intervention—even after final judgment—once it becomes clear the movant's interests are not adequately represented by plaintiffs. *See*, e.g., *Hill v. Western Elec. Co.*, 672 F.2d 381 (4th Cir. 1982); *Teague v. Bakker*, 931 F.2d 259 (4th Cir. 1991).

Given that inadequate notice prevented Frank from learning his shareholder interests were being ignored and even contradicted, the "critical inquiry" is whether Frank intervened "promptly" once he finally got notice. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96 (1977). Since learning of the Settlement on February 25, Frank diligently evaluated this entire case and investigated possible prejudice to third party grant recipients before bringing his motion to intervene, along with the Rule 60 motion for relief from judgment, within months. Frank Decl. ¶¶ 13-18. Frank learned *Tuesday* that none of the $100 million funding commitment has been disbursed, and that Altria instead "expect[s] to begin funding in 2024." *Id.* ¶ 18. Because judgment was final, Frank also had to research additional legal issues pertaining to reopening judgments and

12

the ethics of challenging final judgments that would not have been at issue if he received notice. Thus, while judgment is already entered, given the circumstances this case's progress does not weigh against Frank's intervention as timely.

The final *Alt* factor—prejudice—also does not weigh against finding Frank's motion to intervene as timely. While Frank's intervention will likely result in additional litigation costs for the parties, he is intervening to reduce the gargantuan *cy pres* distribution in the Settlement. Any reduction he achieves will only *benefit* the corporation and the shareholders, who all have financial interest in Altria and thus profit from a reduced Funding Commitment. *Cf. Gould v. Alleco, Inc.*, 883 F.2d 281, 286-87 (4th Cir. 1989). The named defendants—all Board Directors—separately benefit from competition between Frank and the named plaintiffs to negotiate a better settlement, while voiding this Settlement "reduce[s] the risks of damaging … litigation" against the Directors for negotiating such a bad deal that nevertheless benefitted them. Memo ISO Amended PAO, ECF 140 at 28; *see also In re Cendant Corp. Litig.*, 264 F.3d 286, 294 (3d Cir. 2001) (noting the Directors opened themselves up to subsequent litigation for negotiating the release of their own personal liability). As an intervenor Frank "must accept the proceeding as he finds it." *Johnson v. Middleton*, 175 F.2d 535, 537 (7th Cir. 1949). To be clear, Frank does not seek to unwind any program payments that might have already been paid under the settlement. None of the $100 million funding commitment has not yet been disbursed. Frank Decl. ¶ 18.

But if this Court disagrees, "any prejudice created" by intervention is still "of [the parties'] own making." *Adam Joseph Res. v. CNA Metals Ltd.*, 919 F.3d 856, 865 (5th Cir. 2019) (permitting post-judgment intervention). The poor notice scheme to "advertise" the Settlement intentionally eschewed direct notification for minimalist and insufficient box-checking. "Prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of

13

allowing the intervenor to participate." *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994). Finding any prejudice to the parties here because the case is mature would be an inappropriate, Court-granted windfall. Thus, upon weighing all three *Alt* factors, Frank's motion is timely.

Frank's motion to intervene demonstrates an interest in this litigation, risk that his interest will be impaired without intervention, inadequate representation by the parties, and timeliness. *Scardelletti*, 265 F.3d at 202. Therefore, he satisfies all four requirements to intervene as a matter of right under Fourth Circuit law. *Id.; Scott*, 734 F. App'x at 191. This Court should grant his motion.

## II.   In the alternative, this Court should permit Frank to intervene under Rule 24(b).

Rule 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b); *see also Brown*, 663 F.2d at 1278. Further, the Fourth Circuit requires that permissive intervention not "prejudice the adjudication of the original parties," and that it be timely. *Alt*, 758 F.3d at 591; *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013). Because Frank fulfills all these elements, the circumstances of this case justify permissive intervention.

*First*, by the very nature of a derivative suit Frank "shares with the main action … a common question of law." Fed. R. Civ. P. 24(b). As a shareholder, he has just as much at stake in whether the Settlement "fairly and adequately serves the interests of [Altria]" as the named plaintiffs. *Zimmerman*, 800 F.2d at 391. Frank does not believe the Settlement is beneficial, whereas the named parties and prior objectors do. And as an Altria shareholder, Frank has standing to assert this argument in this Court. *See In re Cmty. Bank of N. Va.*, 418 F.3d at 314.

*Second*, there is no prejudice against the parties by permitting Frank to intervene. Frank wants to reduce the Funding Commitment and payouts to the attorneys and Independent Monitor,

14

which would only enrich the share-owning parties if he is successful. But even if this Court disagrees, as noted before "any prejudice created" by intervention is "of [the parties'] own making." *CNA Metals Ltd.*, 919 F.3d at 865. Their specious notice is the sole reason Frank's motion to intervene is introduced at this stage of the litigation.

*Third*, as explained above, Frank's motion is timely because he acted "promptly" to file it as soon as he learned about the Settlement and because the Settlement's inadequate notice deprived him of the due-process-required opportunity to object earlier in this case. *United Airlines*, 432 U.S. at 395-96; *Papilsky*, 466 F.2d at 256-60. Even if Frank had had the opportunity to object, it is "surely wrong" to think that that is a wholesale substitute for the right of intervention. *Smith v. SEECO, Inc.*, 865 F.3d 1021, 1025 (8th Cir. 2017) (quoting 3 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 9:34 (5th ed. 2013 & Supp. 2017); *accord Tech. Training Assocs. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 696 (11th Cir. 2017).

For any case, this Court has wide latitude to award permissive intervention when it sees fit. *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003). But this case is not a close call: The parties chose to protect their Settlement rather than ensure the best possible outcome for Altria. *Zimmerman*, 800 F.2d at 391. They replaced the company's traditional means of contacting shareholders with superficial notice. And without fair notice, Frank's shareholder rights are rights in name only. *See Papilsky*, 466 F.2d at 256-60. Now, Frank cannot appeal the Settlement under Fourth Circuit precedent without being a named party, so he must intervene. *Scardelletti*, 265 F.3d at 208-10.

Accordingly, because this Court has a responsibility to protect Altria and its shareholders, Frank's rights, and due process as outlined by the Constitution, it should grant Frank permissive intervention if not as of right.

15

## CONCLUSION

WHEREFORE, Frank requests that this Court grant his motion to intervene as a matter of right. In the alternative, Frank requests that this Court grant him permissive motion to intervene.

DATED this 4th day of August, 2023.

Respectfully submitted,

<u>/s/ John M. Andren</u>
John M. Andren
VA Bar No. 90518
Hamilton Lincoln Law Institute
15841 SW 83rd Avenue
Palmetto Bay, Florida 33157
Telephone: (703) 582-2499
Email: john.andren@hlli.org

*Counsel for Objector Theodore H. Frank*